IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
QENDRESE SADRIU RRUSTEMI
            Plaintiff,                            ECF

                                                         Index Number: 24 cv 8832

    -against-

YOUR VET I LLC, YOUR VET DIRECT EB-5
GROUP 1 LLC, URVET CARE HOLDING, LLC,
COLLECTIVELY "URVET CARE" and EVAN R
STOOPLER in his individual capacity

            Defendants.
---------------------------------------------------------------x

## VERIFIED COMPLAINT

Plaintiff, Qendrese Sadriu Rrustemi ("Rrustemi") by and through her attorney Kevin T. Duffy, Jr., Esq., file this Complaint and allege as follows:

The allegations in the Complaint are based on the Plaintiff's personal knowledge, written evidence presented to Plaintiff's counsel and upon the investigation of counsel, as to all other matters presented herein.

## PRELIMINARY STATEMENT

1-    Rrustemi is a resident of Yonkers, New York

2-    Defendant, YOUR VET DIRECT EB-5 GROUP 1 LLC (the "Company" or the "NCE"), is a Delaware limited liability company with a registered address located at 2140 S Dupont Hwy, Camden, DE 19934.

3-    Defendant, Your Vet 1, LLC (the "JCE"), is a New York registered Delaware Corporation formed in 2021 and registered in New York in 2022. According to NYS Secretary of State's

1

website the company maintains an office for a registered service agent at 1298 Park Street, Atlantic Beach NY.

4- Defendant, URVET CARE HOLDINGS, LLC, is a Delaware limited liability company with a registered address at 850 New Burton Road, Suite 201, Dover, DE 19904.

5- Defendant, Evan R Stoopler ("Stoopler"). is an individual residing at 252 E 57th Street, Apt 44A New York, NY. Stoopler is one of the founders, owner, and manager of the JCE ("Job Creating Company"), as well as the sole Manager of the NCE after his partner, David Finkelstein ("Finkelstein") resigned in December 2022.

6- At all times relevant hereto, Stoopler has been responsible for controlling the day-to-day management and general business affairs of all the entities of the Your Vet and URvet Care Veterinarian locations.

7- In 2021 the two founding members (Stoopler and Finkelstein) and Rrustemi undertook to raise start-up funds through the EB-5 Immigration Program, a U.S. government program designed specifically to serve foreign nationals seeking to become eligible to obtain lawful permanent residence in the United States by making a qualifying investment of $500,000. Shortly thereafter raising $2,500,000 from 5 Foreign investors, Stoopler offered the Plaintiff a salaried position for a minimum five-year period or until all EB5 investors have completed their full immigration process of obtaining a non-conditional Green Card which is estimated to take at least seven years. The reason that the Plaintiff was offered this position is that she had experience running EB-5 companies for Finkelstein and was fully familiar with the statute and rules governing EB5 company guidelines that are needed to secure government approval. Stoopler also understood that Rrustemi is an experienced, organized and driven individual who had a long track record of success in EB5 Funded companies.

2

This was self-evident to the Defendants who knew that the Plaintiff ran the operations for several of Finkelstein's EB5 businesses for more than 10 years, and previously raised significant amounts of EB-5 startup capital for ventures. Simply the Plaintiff was hired to provide her experience and allow for the launch of URvet Care business: a chain of veterinary hospitals in New York. The contract under which the Plaintiff was employed gave her the title of Chief Administrative Officer and Investment Director. A copy of that contract is attached herewith as **Exhibit 1.**

8- The Defendant Stoopler tried to renege on the terms of the contract by at first trying to force the Plaintiff to accept a severally diminished salary. The Plaintiff was then told that her performance was not up to standard although she had continuously been given additional responsibilities such as Accounting, Bill Pay, Financial Projections since the Defendant Companies were initially formed. Defendant Stoopler, however, acknowledged that this was not true. A copy of a transcript of a recording, acknowledging this fact, is attached herewith as **Exhibit 2.** The Plaintiff believes that the sole reason for her dismissal is that the Defendants, in particular, Stoopler refused to abide by the laws and regulations involved in EB-5 Immigration program.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over the claims asserted by Plaintiff, pursuant to 28 U.S.C. § 1332 as this action involves claims regarding the administration of a Federally sponsored EB-5 US Immigration program and is therefore a proper. Certain of the relief requested by Plaintiff in this action is authorized by 28 U.S.C. §§ 2201 and 2202 (declaratory relief, and other necessary or proper relief based upon a declaratory judgment).

2. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b)(2) because

a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, in this District, and pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants are subject to the court's personal jurisdiction with respect to this civil action.

## IMPORTANT NON-PARTIES

3. David Finklestein was one of the two original founding members. He is no longer active in the day-to day business of Your Vet 1 LLC or the Your Vet EB5 Direct Group 1 LLC or any other entity related to URvet Care however, he still maintains ownership only in Your Vet EB5 Direct Group 1 LLC.

4. Aimee Stoopler, the wife of Stoopler, now holds herself out as a Founding Member of Defendant's companies and holds the title of Founder and Managing Director.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## STATEMENT OF FACTS

6. Rrustemi is a naturalized US citizen, who speaks 6 languages fluently, and as such has been active in helping start and run EB-5 funded companies over the last ten years. In addition, to serving as Chief Administrative Officer and Investment Director for URvet Care, Rrustemi was also actively involved in securing EB-5 investors for investment into the NCE. In fact, Ms. Rrustemi knowledge was instrumental and crucial in signing the first five (5) EB-5 investors, generating two and one-half (2.5) million dollars in startup capital. This capital was the paramount reason that allowed Stoopler and Finkelstein to open and begin the funding of

4

the Your Vet business. Finkelstein and/ or Stoopler did not invest any money whatsoever. Furthermore, Rustemi's employment agreement was mostly based on her participation of continuing to raise EB-5 funding and monitoring the participation of the current EB-5 investors as well as additional EB-5 investors to ensure their successful completion of the 5-7 year immigration EB-5 process. Stoopler is now using documents and brochures of EB-5 created by Rrustemi to continue raising EB-5 funds as he did for Your Vet 2, LLC.

7. The Defendant companies are relatively young and operate a series of veterinarian care centers in New York. Like virtually every other company that is located in NY, its startup costs are very high. Stoopler and Finkelstein (collectively "founders") recognized this and believe that the best way to raise funds for the venture was to get capital from foreign investors through the EB-5 program administered by the US Government. That program allows investors to receive "Green Cards" if the company provides the required proof that each investor's $500,000 investment creates 10 qualified jobs within 30 months of their I-526 approval.

8. To date, no EB5 Investor has been granted a "Green Card."

9. The Founders presented a business plan in which neither founder would take a salary or money from the company. A copy of the founders' Operating Agreement showing no salary or draw against earnings is attached herewith as **Exhibit 3.**

**10.** This was a non-starter for the Plaintiff who needed a salary to support her young family. As such, it was decided that she would become an employee of a company with a set salary of One Hundred and Fifty Thousand Dollars ($150,000) per annum and a guaranteed bonus. **See Exhibit 1.**

11. Stoopler remains the only original founder of either of the Defendants' LLC's who holds a management position. Since Finkelstein left , Stoopler and his wife Aimee have operated the

5

business as their own private fiefdom. They have hired people they like (including family members) and terminated or demoted those who disagree with the management of the companies and various subsidiaries. Despite putting forth a business plan which showed that the founders would not draw a salary, Defendant Stoopler has paid his wife Aimee Stoopler and daughter Amanda Stoopler, salaries in excess of $480,000 annually from investor's equity.

12. Upon Plaintiff's termination, the Defendants businesses were not yet profitable, although they are in the third year of existence

13. The Plaintiff told Defendant Stoopler on many occasions that he should not be putting personal expenses through the Defendant Companies and had to run very tight books and records to comply with EB-5 Rules. Instead of listening to the advice of someone like the Plaintiff, who has been involved with EB-5 companies before, Stoopler simply disregarded the advice, and has put personal expenses through the Defendant companies. These expenses include virtually all breakfast, lunches, dinners, coffee, monthly parking, and personal phone bills.

14. Instead of addressing the issues with running the Defendant entities, Stoopler simply tried to cut costs by demoting or firing individuals. He eventually sought to demote the Plaintiff by claiming that she was not fulfilling the terms of her contract. This was not true. In fact, Stoopler himself recognized this as he tried to justify to the Plaintiff the considerably lower salary which was $80,000, almost half the salary of $150,000 she had been *contractually promised,* but had the exact same responsibilities. A copy of the revised offer letter and the email is attached here as **Exhibit 4.**

15. After Finkelstein left, the Plaintiff told the Defendants that they needed to generate IRS form K-1s for the EB-5 investors. This suggestion was completely ignored by Stoopler and the

Defendant companies. Prior to being terminated, not one 2023 K-1 was generated or sent to any EB-5 investors in the Defendant companies.

16. Defendant Stoopler never informed the investors about the ongoing losses in the businesses or the more than $5 million of investor equity spent carelessly to operate and buildout locations that occurred during the first 3 years of operation (2021/2022/2023). Because K-1s were never sent to investors, the Defendant should have sent each EB-5 investor a copy of the tax returns. Like the K-1's they were never sent to the investors.

17. The Defendant Stoopler also failed to inform the companies' investors about lawsuits and problems that included an ongoing $1.5 million lawsuit instituted by the builder (Eastman Cooke) who constructed both 1432 2nd Ave and 200 Chamber's Street which was not fully paid.

## COUNT ONE
### (Breach of Contract)

18. Paragraphs 1 through 17 of the Complaint are realleged and incorporated into this Count as if fully set forth herein.

19. The Plaintiff has a valid employment contract which the Defendants have decided not to honor **(See Exhibit 2)**. At minimum the Plaintiff is owed $150,000 per year for the next five years or $750,000.

20. As a direct and proximate result of Defendants' actions, Plaintiff has been caused to suffer money damages, together with interest, costs and legal fees.

## COUNT TWO
### (Fraudulent Inducement of Plaintiff and EB-5 Investors)

21. Paragraphs 1 through 20 of the Complaint are realleged and incorporated into this Count as if fully set forth herein.

22. At this time, the Defendants have been unjustly financially enhanced through the fraudulent use of the Plaintiff to raise the original EB5 investment for the launch of the companies' and those of EB-5 have been misused by Defendant Stoopler to his benefit and are the monies wrongfully taken from the Defendant companies accounts. Meanwhile the Plaintiff is owed money due and payable to her under the terms of the contract.

23. As a direct and proximate result of Defendants' actions, Plaintiff has been caused to suffer money damages, together with interest, costs and legal fees.

## COUNT THREE
### (Bad Faith as against All Defendants)

24. Paragraphs 1 through 23 are incorporated herewith in the Third Count.

25. The Defendants engaged in deceptive conduct out of self-interest, with the intent to mislead or deceive the Plaintiff into letting them pilfer from the Company and its investors. As a result of the Defendants' bad faith conduct, the Plaintiff has suffered damages.

26. Instead of using the money and corporate resources for EB-5 Investors' benefit, the Defendants have taken and used it as if it was their own.

27. The Defendants have put themselves above everyone else and have failed to honor their contractual obligations to me and everyone else.

**WHEREFORE**, Plaintiff prays for the following relief:

1. On the Claims for Relief, that this Court issue:

2. a Declaratory Judgment that the Plaintiff has a valid contract.

3. On the First and Second Count for Claims for Relief, that this Court award Plaintiff damages against Defendants in an amount to be determined by a jury; but in no event shall it be less than an amount of seven hundred and fifty thousand $750,000, or the equivalent of 5 years' salary pursuant to the terms of the contract and EB-5 Rules;

4. Pre-judgment interest;

5. Post-judgment interest; and

6. Such other relief that the Court may award that is just and equitable.

THE PLAINTIFF,

QENDRESE SADRIU-RRUSTEMI

By: *KTD*

Kevin T. Duffy, Jr., Esq.
SDNY Federal ID No. 28134

165 West Putnam Road, Suite 2R
Greenwich, CT 06830
Tel.: (203) 531-3300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

QENDRESE SADRIU RRUSTEMI
                Plaintiff,

      -against-

YOUR VET I LLC, YOUR VET DIRECT EB-5
GROUP 1 LLC, URVET CARE HOLDING, LLC,
collectively "URVET CARE" and EVAN
STOOPLER in his individual capacity

                Defendants.

----------------------------------------------------------x

ECF

Index Number: 24 cv 8832

## AFFIDAVIT IN SUPPORT

I, Qendrese Sadriu Rrustemi ("Rrustemi"), being duly sworn, deposes and states under the penalties of perjury:

1. I am an individual with 10 years of experience dealing with EB-5 companies and have gained knowledge of USCIS guidelines relating to the 5-7 year process for foreign investors to successfully complete the EB5 immigration process.
2. I was solicited by the Defendants and one of the founders of the companies to help them raise funds and help start operations.
3. I agreed to be hired as an employee of the Defendant companies instead of a partner because the original operating agreements called for partner not to be paid a salary.
4. I agreed to be paid an annual salary of $150,000 (one hundred and fifty thousand dollars) to be the chief administrative officer and investments director. I was to be paid an annual bonus for each year that I worked for the company. No such bonus was ever paid.
5. I was instrumental in securing the first 2.5 million dollars of investments from EB-5 investors. Before I brought these investors to the Defendant companies the founders (minus me) had not raised any money to start the business and had not contributed any money of their own to the business either.
6. I successfully ran the Defendant companies' day to day operation for the first year and half of its existence. Things changed when one of the founding members, David Finkelstein left in August of 2023. I do not know the circumstances or the cause of his leaving the Defendant companies.

11

7. As with any other start up, I put in long hours to get the Defendant companies up and running. More often than not, I put in 12 -16 hour days and in fact completed several all-nighters on behalf of the Defendant companies and the Defendant Stoopler.
8. Shortly after Finkelstein left the Defendant companies, my responsibilities increased, and I had to take on more tasks such as accounting and bill pay. Defendant Stoopler and his wife Aimee Stoopler then began to force me to train people to do jobs that I had previously done at the Defendant companies. It was obvious that he was using my knowledge and drive to try to replace me with other perhaps less expensive workers. When I directly asked if this was the case, the Stooplers denied this.
9. I often told the Stooplers that they could not run the defendant company's as if they were their own operation. I told them on many occasions that Federal immigration and securities laws applied to them because they had taken 2.5 million dollars in seed money through a Federal immigration program. I also told them that each of the five investors was to be kept informed as to the status of the defendant companies. My advice to the Stooplers was completely ignored.
10. In fact, I directly questioned the Stooplers about one individual who was based in Texas who I was apparently supposed to report to even though I had the title and knowledge that she should have been reporting to me.
11. On or about April 15,2024, I was told that I was not doing my job and that I needed to improve, or I would be terminated. This was rather ridiculous as I was never given a list of responsibilities simply because both Stoopler and his wife Aimee Stoopler had no previous experience or knowledge of running an employee operational business and did not know what had to be done. I took it upon myself to do what needed to be done to start operations, including payables and billing processes. I established the human resources processes for hiring and termination of employees, I oversaw and trained management on managerial tasks and responsibilities, established policies and procedures for purchasing and vendor relationships, oversaw and established compliance and so on.
12. On or about April 15th, 2024, shortly before receiving the notice that I would be terminated Defendant Stoopler and Aimee Stoopler asked to speak to me on a Microsoft teams meeting which is recorded, in which he admitted that this was all made up so that he would not be in breach of contract and that he was going to offer me another job within the company, but that my salary would be "at par with what other people are making". This conversation was then followed by an email with a notice to terminate.
13. On or about April 16, 2024 the Defendant Stoopler and Aimee Stoopler asked me to be on another Microsoft Teams Meeting which is also recorded where they listed my responsibilities which were the same as before and anything else I might be doing that they don't know that has to be done, and said they would send it to be by email. Shortly after I received an email with the list of responsibilities and anything else that I might be doing and they don't know, at a significantly lower salary. I said no to this offer.
14. On or about May 17, 2024 I received a phone call from Stoopler informing me that my employment had been terminated which was followed by an email with the employment termination notice, to which my attorney replied.

14. On or about May 17, 2024 I received a phone call from Stoopler informing me that my employment had been terminated which was followed by an email with the employment termination notice, to which my attorney replied.
15. On or about July 1, 2024, my attorney received a reply from the Defendants' attorney which again tried to convey the same line of nonsense that I had not done my job. It is very evident that the author of that letter had simply listened to Stoopler and was not informed of the fact that he had made an offer for me to continue to work at the Defendant companies at a severely diminished salary.
16. Neither Stoopler nor his wife Aimee Stoopler have any prior experience or skill in managing and overseeing operations of any employee operational business and lack the integrity necessary to comply with the fiduciary responsibility of acting as stewards of the hard-earned money that investors have entrusted them with.
17. Stoopler lacks any knowledge or proficiency in animal medical care as required by New York State Law, and as such he cannot be involved in any medical aspect of the business. He was continuously in breach of this legal requirement which is also spelled out in the Master Services Agreement. I have continuously brought this to his attention to no avail.

Dated:   November 12 2024

Qendrese Sadriu Rrustemi

Sworn to me before this 12 day
of November, 2024

Notary Public